UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERI J. WILLIAMS | ) | Case No. 5:07CV3826 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Doc. #37] |
| PVACC, LLC, | ) | |
| | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | |

This matter is before the Court upon a motion for summary judgment filed by Defendant PVACC, LLC ("PVACC"). For the reasons stated herein, PVACC's motion is GRANTED.

**I.   Facts**

Plaintiff Teri Williams was hired by PVACC in 1996 to work in a skilled nursing facility known as Pine Valley Care Center. From 1996 to 2003, Williams worked as a dietary aide and cook at Pine Valley. On June 19, 2003, Williams was promoted to a dietary supervisor position. There was no issue with Williams' job performance during the bulk of her employment. She was named the employee of the month on three separate occasions and as noted above had been promoted to a supervisor's role.

Williams began experiencing problems at work when a new Director of Dietary Services, Iren Millberg, was hired in early 2006. From all appearances, Williams did not like Millberg's management style. Williams felt that her duties were being unfairly delegated to her subordinates and that she was constantly undermined by Millberg's actions. Additionally, after

Millberg was hired, the number of dietary aides working the evening shift was reduced from three to two.  This resulted in "prep work" often being shifted from the evening shift, where it had been previously performed, to the following morning shift.  Williams viewed this as an example of the dietary aides not getting their jobs done in a proper manner.  However, despite being a supervisor, Williams never attempted to discipline any of the aides for their alleged poor work performance.

Williams candidly admitted that her work attitude changed after Millberg began her employment.  Williams indicated that she no longer engaged in small talk with her co-workers and attempted to keep conversations about work only.  Another cook, Joy Hefflefinger, indicated that Williams became mean and angry once Millberg became Director.  Based on her poor demeanor, Williams received a "Corrective Counseling Report" on July 1, 2006.  The report indicated that Williams was failing to perform her supervisory duties at a level acceptable to PVACC.  The report also indicated that a continued failure to perform could result in demotion or termination of Williams' employment.

Williams' poor demeanor toward Millberg was again displayed on July 20, 2006.  On that day, staff members were informed that Millberg was at the hospital because her husband had a heart attack and was in critical condition.  Williams opined that Millberg should be at work instead of the hospital and that she "had it coming to her."  Williams comments greatly upset at least one staff member, Andrea Jensen, who reported the conduct to Hefflefinger.  Management learned of Williams' conduct and issued a second Corrective Counseling Report on July 26, 2006.  Based on her conduct, Williams was demoted from her supervisory position.

Roughly one month later, on August 27, 2006, Williams was scheduled to work her morning shift until 2:30 p.m..  According to Williams, since prep work had not been completed

2

the night before, she had to work through her normal fifteen-minute break time in the morning. However, by her own admission, she left her work at area between 2:05 and 2:08 and informed her co-workers that she was done for the day. Employees reported this conduct to management and the matter was investigated. Following the investigation, Williams was terminated for theft of time.

On November 9, 2007, Williams filed her complaint in the Summit County Court of Common Pleas. PVACC removed the action to this Court on December 17, 2007. Williams then amended her complaint on May 15, 2008, and subsequently withdrew her public policy claims on June 11, 2008. Accordingly, Williams' remaining claims include that her termination was the result of age, gender, and race discrimination.

On December 1, 2008, PVACC moved for summary judgment on each claim in the complaint. Williams responded in opposition on December 30, 2008, and PVACC replied on January 9, 2009. In that response, PVACC moved to strike several of Williams' exhibits. Williams' responded to that request on January 15, 2009. For the purposes of this order, the Court has reviewed the entirety of the evidence offered by Williams.

**II.     Legal Standard**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

3

> on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting former Fed.R. Civ.P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens.  *Id*. at 252.  Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Kentucky Dep't of Transp*., 53 F.3d 146, 150 (6th Cir. 1995).  Moreover, Fed.R. Civ.P. 56(e)(2) states as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### III.  Legal Analysis

#### A. Gender, Race, and Age Discrimination

The Sixth Circuit has detailed the elements of a prima facie case of gender discrimination as follows:

> Because she has no direct evidence of discrimination, [Williams] must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse

4

> employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. In her attempt to satisfy the fourth element, [Williams] alleges that similarly situated … employees were treated more favorably than she was. [Williams] may make this comparison only if the … employees that she has identified are similarly situated in all respects to her.

*Peltier v. U.S.*, 388 F.3d 984, 987 (6th Cir. 2004) (citations and quotations omitted). "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citing *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531 (S.D.N.Y. 1986); *Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir. 1988)). The same factors are relevant when considering Williams' age discrimination claim and her race discrimination claim. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007) (detailing the elements of a prima facie case of age discrimination); *Wills v. Pennyrile Rural Elec. Co-op. Corp.*, 259 Fed. Appx. 780, 783 (6th Cir. 2008) (stating the elements of a prima facie case of race discrimination).

The parties appear to agree that Williams has satisfied the first three prongs of a prima facie case for each of her claims. However, they dispute the fourth prong. The Court now reviews their contentions.

1. **Replaced by a person outside the class**

Although unclear, it appears that Williams has at least in passing asserted that she was replaced by a person outside the protected class. The evidence does not support this argument.

5

With respect to her demotion from assistant supervisor, Williams was not replaced at all. Furthermore, following her termination, the undisputed evidence shows that Williams' job duties were assumed by three other existing employees.

> [A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citing *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980)); *see also Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."). Accordingly, Williams may not rely on a replacement theory to satisfy her prima facie case for any of her claims.

**2. Similarly situated**

Williams presents two comparators in support of her similarly situated argument, Joy Hefflefinger and Jason Clark. The Court is not persuaded by Williams' arguments with respect to either individual.

With respect to Clark, Williams' argument must fail as Clark was at all times employed in a position, dietary aide, which was subordinate to Williams' position. In fact, even after Williams' demotion, she still held a position that was supervisory to the position of Clark. As such, the Court finds that Clark is not similarly situated to Williams.[1]

Next, Williams alleges that Hefflefinger was a similarly situated employee with a far more extensive disciplinary record. Williams' comparison to Hefflefinger is also improper.

---

[1] Furthermore, as detailed below, Williams' reliance on other employees' excessive cigarette breaks is also misplaced.

Hefflefinger admittedly has a lengthy history of discipline. Hefflefinger was disciplined for the following: 1) leaving a roast in the oven over night, 2) leaving a steam table on all night, 3) being tardy and missing work, 4) failing to punch in and out properly, 5) using the word "ass" during work hours, and 6) taking excessive cigarette breaks. Williams also details numerous actions for which she believes Hefflefinger should have been disciplined, including leaving the premises during her lunch hour and visiting the facility during non-working hours.

Williams has made no effort to explain how Hefflefinger's discipline regarding her language use, her tardiness and absence, the roast, and the steam table are remotely similar to her own misconduct. Likewise, Williams has made no argument to demonstrate how the actions for which she believes Hefflefinger should have been disciplined are in any way similar to her own misconduct. Instead, Williams has focused upon Hefflefinger's failure to punch in and out properly and her cigarette breaks. The Court finds numerous deficiencies in Williams' attempted comparisons.

With respect to the punch card issue, Williams ignores several key facts. First, PVACC has a specific policy in place dealing with the punch card issue. That policy details the progressive discipline that will be result in missed punches, and there is no indication that Hefflefinger's discipline was not directly in line with that policy. Williams' argument that Hefflefinger "was counseled, not terminated when she 'stole time' by failing to punch out numerous times for her lunch break" misconstrues the effect of Hefflefinger's failure to punch in and out. Williams has offered no evidence that Hefflefinger's failure to punch out resulted in her being paid for time for which she should not have been paid. Rather, the evidence shows that Hefflefinger's missed punches resulted in discipline because they caused administrative issues with respect to demonstrating that she had properly taken her lunch breaks. The missed punches

7

cannot be said to be comparatively as serious as Williams' theft of time. Accordingly, they offer no support for Williams' claim that she has met her prima facie burden.

Williams' next argues that Hefflefinger's excessive cigarette breaks are the functional equivalent of the conduct for which she was terminated. The Court also finds this argument to lack merit.

First, there is no dispute that excessive cigarette breaks were a problem at PVACC. In her affidavit, Ruth Hardke, the Human Resources Manager at PVACC, stated as follows:

> "Pine Valley has had a long-standing issue with kitchen employees taking excessive cigarette breaks. As part of the Facility's efforts to address the issue, management conducted in-service meetings for all kitchen staff that addressed break times, among other topics."

Doc. 37-3 at 1. Furthermore, evidence indicates that Hefflefinger was one of the individuals involved with taking these cigarette breaks; however, that is the extent of the evidence in the record.

Williams has failed to provide any evidence as to the frequency of these cigarette breaks, their duration, or even when these breaks were taken. Absent that evidence, it is impossible to determine whether these alleged violations were comparably as serious as Williams' misconduct. For example, Williams left her work station at 2:08, informing her co-workers that she was leaving for the day. Viewing the evidence in a light most favorable to Williams, this was a full seven minutes before she could leave, and she was taking her break at an unauthorized time. Furthermore, Williams conduct occurred less than two months after management had conducted an in-service about the appropriate use of break time.

With respect to Hefflefinger, the record is devoid of any specifics regarding her alleged misconduct. For example, there is no indication of whether her excessive breaks continued following the in-service meeting held by management. Further, while labeled "excessive

8

cigarette breaks," Hefflefinger's specific conduct is never described. It is not clear whether she took too many breaks, but within the total break time allowed, or took breaks that extended beyond the time allowed.[2] Moreover, assuming for the sake of argument that her breaks extended beyond the time allowed, Williams has never identified even generally how much time Hefflefinger "stole" from PVACC through her conduct. Accordingly, given the overly general facts presented by Williams, she has failed to demonstrate that Hefflefinger's infraction was comparably serious.

Assuming arguendo that the cigarette breaks were comparably serious, Williams' argument that Hefflefinger is similarly situated still must fail. Williams' prior discipline provides a meaningful distinction. On July 1, 2006, Williams received a "Corrective Counseling Report" for "Unacceptable Work Performance." The report indicated that "failure to not perform supervisor job duties may result in losing supervisor position which may result in losing employment." Doc. 37-5 at 18. On July 26, 2006, Williams was again disciplined, this time for an act that occurred on July 20. Another employee, Andrea Jensen, reported that Williams had made "highly inappropriate comments to staff members about supervisor Iren Millberg." Doc 37-3 at 2. The record indicates that Millberg's husband had suffered a heart attack and that Millberg was with him at the hospital. Jensen reported to PVACC that

> "Teri Williams said she was unsure and that she felt like Iren should be here with us rather than in the hospital with him and that she had it coming to her. She said it in a nasty way, and I was taken back by her comment. It put me in a very uncomfortable situation for my supervisor to be talking about my boss in such a mean, heartless way."

Doc. 36-2 at 17. As a result of this action, Williams received a second Corrective Counseling Report and was demoted from her supervisor position. Roughly one month later, Williams

---

[2] Another employee, Jessica Schodowski, did indicate that she felt that the cigarette breaks for some people "most likely [came] close to being half of their shift." This type of hyperbole is not helpful to the Court's determination.

9

engaged in the activity that led to her termination.  Accordingly, within a span of sixty days, Williams committed three separate infractions.

Williams has offered no argument that her two *prior* rule infractions were in any manner similar to any of Hefflefinger's alleged infractions.  Furthermore, Williams has offered no argument that the cumulative seriousness of Hefflefinger's alleged infractions is somehow similar to the cumulative seriousness of her own infractions.  Simply stated, Williams seems to assert that since Hefflefinger has a lengthy history of discipline and was not fired, then the two must be similarly situated.  There is no law to support such an argument.  As it was Williams obligation to produce some evidence that Hefflefinger's distinct infractions were of comparable seriousness to her actions, s*ee Jackson v. FedEx Corporate Srvs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008) (citing *Lanear*, 843 F.2d 298), her claim must fail.

Finally, the Court notes that there are at least two other distinct flaws in Williams' reliance on the cigarette breaks.  First, the record demonstrates that the excessive cigarette breaks were an issue for both Caucasian and African American employees, young and old employees, and men and women.  PVACC's choice of discipline for these alleged infractions, the in-service, was uniformly applied to everyone.  Accordingly, no negative inference can be drawn from that choice of discipline with respect to any alleged age, race, or gender discrimination.  Employees of all ages, races, and both genders were treated equally.  This equal discipline is yet one more example that Williams' theft of time was distinct from the cigarette breaks issue.

Furthermore, Williams ignores that she was in a supervisory position over Hefflefinger until her demotion on July 26, 2006.  Williams admits during that time period that she never attempted to formally discipline Hefflefinger for any alleged infractions.  As such, to the extent that Williams relies on alleged infractions that occurred while she was a supervisor, her reliance

is misplaced.  Williams can hardly be heard to complain about a failure to discipline when she herself decided not to impose the discipline.

Based upon all of the above reasoning, the Court finds that Williams has failed to identify any similarly situated persons who were treated differently without differentiating or mitigating circumstances.  Williams, therefore, has failed to demonstrate a prima facie case in support of any of her discrimination claims.

**IV.  Conclusion**

Based upon the reasons stated herein, PVACC's motion for summary judgment is GRANTED.  Williams' complaint is DISMISSED.

IT IS SO ORDERED.


DATED: January 16, 2009                    /s/ John R. Adams
                                            JUDGE JOHN R. ADAMS